LAURA E. DUFFY
United States Attorney
BRETT NORRIS
Assistant U.S. Attorney
California State Bar No. 224875
CHRISTOPHER B. LATHAM
Assistant U.S. Attorney
California State Bar No. 160515
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7147
Facsimile:  (619) 557-5004

JUSTIN A. OKUN
Trial Attorney
California State Bar No. 230954
JOHN O. HOLM
Trial Attorney
U.S. Department of Justice
Environmental & Natural Resources Division
Land Acquisition Section
601 D Street, Room 3930
Washington, DC 20004
Telephone: (202) 305-0299
Facsimile:  (202) 305-0398

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) Civil No. 10cv1133 BEN (CAB) |
| Plaintiff, | ) |
| | ) UNITED STATES OF AMERICA'S |
| | ) MEMORANDUM OF POINTS AND |
| v. | ) AUTHORITIES IN SUPPORT OF |
| | ) MOTION TO EXCLUDE RANDY TAGG'S |
| 242.93 ACRES OF LAND, MORE OR LESS, | ) VALUATION TESTIMONY |
| SITUATE IN SAN DIEGO COUNTY, | ) |
| STATE OF CALIFORNIA; AND KYDDLF & | ) Date: December 19, 2011 |
| RDLFGFT #1, LLC, ET AL., | ) Time: 10:30 a.m. |
| | ) Courtroom: 12 |
| Defendants. | ) Hon. Roger T. Benitez |
| | ) |

1

## TABLE OF CONTENTS

2

Page

3   I.    STATEMENT OF FACTS                                                     1

4         A.    The Property Interest Acquired And Its Use By The Government      1

5         B.    Mr. Tagg's Appraisal Report And Deposition Testimony             3

6   II.   STATEMENT OF LAW                                                       6

7         A.    The Only Issue For Trial In An Eminent Domain Proceeding Is The
                Determination Of Just Compensation And The Trial Judge Is Given
8               A Broad Role To Exclude Unsupported Valuation Evidence            6

9         B.    Just Compensation Is Measured By The Market Value Of The
                Property Interest Acquired                                       7
10
          C.    State Law Ordinarily Defines The Property Interest Acquired And
11              California Law Allows For An Easement Over Property For Any
                Lawful Use                                                       8
12
    III.  ARGUMENT                                                              9
13
          A.    Mr. Tagg's Assertion That The Interest Acquired By The United
14              States Transformed From A Right Of Entry To An Easement - And
                That An Easement Is Distinct From A Right Of Entry - Contradicts
15              California Law, This Court's Order Granting Possession, and
                Mr. Tagg's Own Appraisal Report                                  9
16
          B.    Mr. Tagg's Failure To Determine The Market Value For A Right Of
17              Entry For Surveys And Evaluations Results In The United States Not
                Being Equated To A Private Purchaser And Thus His Ultimate Opinion
18              Of Value Does Not Reflect What A Willing Buyer Would Pay A
                Willing Seller For The Interest Acquired By The United States    11
19
          C.    Mr. Tagg Completely Ignored The Impact Of The Taking As A
20              Check On His Opinion Of Value                                   12

21  IV.   CONCLUSION                                                            14

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

<u>Adaman Mutual Water Co. v. United States,</u>
    278 F.2d 842 (9th Cir. 1960)                                                      8

<u>Bonaparte v. Camden & A.R. Co.,</u>
    3 F. Cas. 821 (D. N.J. 1830)                                                       9

<u>Boston Chamber of Commerce v. City of Boston,</u>
    217 U.S. 189 (1910)                                               8, 9, 12, 13, 14

<u>County of San Luis Obispo v. Ranchita Cattle Co.,</u>
    94 Cal. Rptr. 73 (Cal. Ct. App. 2d Dist. 1971)                                    9

<u>Gray v. McCormick,</u>
    84 Cal. Rptr. 3d 777 (Cal. Ct. App. 4th Dist. 2008)                               8

<u>Great Atlantic & Pacific Tea Co. v. State of New York,</u>
    238 N.E.2d 705 (N.Y. 1968)                                                        13

<u>Huyck v. Andrews,</u>
    113 N.Y. 81 (1889)                                                                8

<u>Jacobsen v. Superior Court of the County of Sonoma,</u>
    219 P. 986 (Cal. 1923)                                                            9

<u>Kincaid v. United States,</u>
    35 F.2d 235 (W.D. La. 1929)                                                       9

<u>Kirby Forest Indust., Inc. v. United States,</u>
    467 U.S. 1 (1984)                                                          7, 11, 12

<u>Kohl v. United States,</u>
    91 U.S. 367 (1876)                                                                7

<u>Los Angeles Terminal Land Co. v. Muir,</u>
    68 P. 308 (Cal. 1902)                                                             8

<u>Los Angeles v. Howard,</u>
    53 Cal. Rptr. 274 (Cal. Ct. App. 2d Dist. 1966)                                   8

<u>McRose v. Bottyer,</u>
    22 P. 393 (Cal. 1889)                                                             8

<u>Oglethorpe Power Corp. v. Goss,</u>
    322 S.E.2d 887 (Ga. 1984)                                                         9

<u>Pomeroy v. State of New York,</u>
    18 Misc. 2d 377                                                                   13

<u>United States v. 33.92356 Acres of Land,</u>
    585 F.3d 1 (1st Cir. 2009)                                                        7

TABLE OF AUTHORITIES (Continued)

<u>Cases</u>                                                                      <u>Page</u>

United States v. 55.22 Acres of Land,
   411 F.2d 432 (9th Cir. 1969)                                          7

United States v. 62.50 Acres of Land,
   953 F.2d 886 (5th Cir. 1992)                                          7

United States v. 100 Acres of Land,
   468 F.2d 1261 (9th Cir. )                                             7

United States v. 237,500 Acres of Land,
   236 F. Supp. 44 (S.D. Cal. 1964)                                   8, 12

United States v. 320.0 Acres of Land,
   605 F.2d 762 (5th Cir. 1979)                                          7

United States v. 499.472 Acres of Land,
   701 F.2d 545 (5th Cir. 1983)                                       7, 11

United States v. Certain Land Situated in Detroit,
   450 F.3d 205 (6th Cir. 2006)                                          7

United States v. Little Lake Misere Land Co.,
   412 U.S. 580 (1973)                                                   8

United States v. Miller,
   317 U.S. 369 (1943)                                             7, 11, 12

United States v. Reynolds,
   397 U.S. 14 (1970)                                                    6

United States ex rel. T.V.A. v. Powelson,
   319 U.S. 266 (1943)                                                8, 14

Winslow v. Vallejo,
   84 P. 191 (Cal. 1906)                                                 8

<u>Constitution and Statutes</u>

U.S. Const. amend. V                                                        7, 9, 14

Cal. Civ. Code § 806                                                              8

Cal. Civ. Proc. Code § 1245.010                                                   9

Cal. Civ. Proc. Code § 1245.020                                                   9

Cal. Civ. Proc. Code § 1245.060                                                   9

<u>Rules</u>

Fed. R. Civ. Proc. 71.1(h)                                                      1, 6

iii

<u>TABLE OF AUTHORITIES</u> (Continued)

<u>Miscellaneous</u>                                                                                      <u>Page</u>

Guthrie, Peter G., "Eminent Domain: Right to Enter Land for Preliminary Survey or
Examination," 29 A.L.R.3d 1104 (2009)                                                                    9

Pursuant to Federal Rule of Civil Procedure 71.1(h), the United States respectfully requests that this Court exclude the valuation testimony of Mr. Randy Tagg.  Mr. Tagg is a real estate appraiser hired by Defendants to opine on the market value of the right of entry for survey and site assessment acquired by the United States in this case.  Contradicting his own report, Mr. Tagg has conjured up a theory unsupported by law that the property interest acquired by the United States is a nearly valueless right of entry but, upon condemnation – i.e., the Defendants' refusal to sell – this interest transformed into a $500,000 easement.  This bizarre transformation theory runs contrary to eminent domain law, which requires that just compensation be measured by market value and that the government be equated to a private purchaser or market participant in the marketplace.  Accordingly, Mr. Tagg's valuation testimony must be excluded from consideration.

# I

## STATEMENT OF FACTS

**A.     The Property Interest Acquired And Its Use By The Government**

On May 25, 2010 the United States took a one-year right of entry over the subject 242.93 acres. The acreage consists of vacant, mostly unimproved land located in Otay Mesa, just north of the border with Mexico.  The United States took the one-year right of entry for surveying, testing, and other investigatory work related to the possible future acquisition of a portion of the 242.93 acres.  The property interest taken was described as follows:

> The estate taken is a temporary, assignable easement beginning on the date possession is granted to the United States and ending 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule "C" to survey, make borings, and conduct other investigatory work for the purposes described in Schedule "B" and to access adjacent lands; including the right to trim or remove any vegetative or structural obstacles that interfere with said work; reserving to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired; subject to minerals and rights appurtenant thereto, and to existing easements for public roads and highways, public utilities, railroads and pipelines.[1]

On June 2, 2010, this Court issued the following order granting possession to the United States:

_____

[1] Declaration of Taking, Schedule "E", Doc. No. 5 at 10.

1

1          Presently before the court is the United States' ex parte application for an order
2 for the surrender of a **right of entry** over the property described in the Complaint filed
herein.  It appearing that plaintiff is entitled to possession of the **right of entry**,

3          IT IS HEREBY ORDERED that all defendants to this action and all persons in
possession or control of the property described in the Complaint filed herein shall
4 surrender a **right of entry** for surveying, making borings, and conducting other
investigatory work, to plaintiff immediately.  Plaintiff shall serve a notice of this order
5 upon all persons in possession or control of the said property forthwith.[2/]

6 During the one-year right of entry agents for the federal government entered onto the property

7 seventeen times for surveying and testing.  Mr. David Wick, an agent of the landowners, testified that

8 during that year he was physically on the property "once or twice a week" and that he "may have" seen

9 a government surveyor on the property "[n]ot more than once."[3/]  Mr. Wick also testified that he does

10 not know how many times surveyors for the government entered onto the property or where they

11 conducted surveying and testing on the property during the one-year right of entry.[4/]  Mr. Wick further

12 testified that he never sought approval from the government to enter onto the property because he

13 understood that the government did not have the right to exclude him  from the property.[5/]  The only

14 restriction Mr.Wick believed was placed on the use of the property was that he could not

15 "hypothetically" sell it with the right of entry in place.[6/]  However, Mr. Wick testified that he actually

16 sold a portion of the property with the right of entry in place to CCA Western Properties.[7/] Additionally,

17 representatives for CCA Western Properties explained to the government's expert real estate appraiser

18 in this case that the right of entry had no effect on the purchase.[8/]

19

20      [2/] Order for Delivery of Possession, Doc. No. 7(emphasis added).

21      [3/] Deposition of David Wick Vol. 1, Exhibit 1 to the accompanying Declaration of Justin Okun, at 51:8-
22 52:7.  (All exhibits referenced herein are attached to the accompanying Declaration of Justin Okun.)

23      [4/] Id. at 50:25-51:7.

      [5/] Id. at 52:8-53:4.
24

25      [6/] Id. at 53:5-10.

      [7/] Id. at 23:21-24.
26

27      [8/] Supplemental Report of Stephen Roach ("Roach Supplement"), Ex. 2 at 2.  There is some confusion
as to whether the right of entry was actually disclosed to CCA Western Properties by Mr. Wick.  Mr. Wick
28 testified that he did not recall disclosing the right of entry to CCA Western Properties but that he believes he

**B.     Mr. Tagg's Appraisal Report And Deposition Testimony**

Mr. Tagg valued the government's taking at $500,000.  Mr. Tagg acknowledges in his appraisal report that the United States took a non-exclusive right of entry:

> Again, the estate taken by the government over the Subject land is a temporary, assignable easement "..... consisting of the right to enter in, on, over and across ..... to survey, make borings, and conduct other investigatory work ....". ***This right of entry for surveys and evaluations*** includes the entire 242.93-acre Subject property.

> The government is taking a non-exclusive easement, meaning the property owner may continue to use the property for any purpose that does not interfere with the government's intended use.[9]

At his deposition, Mr. Tagg testified that the right of entry acquired by the United States involves "a very nominal use, very nominal"[10]:

> Well, certainly the government isn't going to do a whole lot out there.  They're going to do some borings.  They're going to drive around the property.  They may remove some shrubbery.  They're going to do some surveying.  They're going to do different things.

> It's, in my opinion, yes, a reasonably nominal use of the property.[11]

Nevertheless, Mr. Tagg valued the right of entry acquired by the United States by comparing it to exclusive use leases for parking, storage, and agriculture, option agreements, and non-exclusive use leases for skydiving and parachuting,[12] even though Mr. Tagg testified that skydiving and parachuting are not uses permitted to the government under the right of entry or on the subject property.[13]  When asked at his deposition about rights of entry between private parties, Mr. Tagg testified that he did not

---

disclosed it.  Ex. 1 at 24:3-25:8.  Representatives from CCA Western Properties informed the government's appraiser that they did not recall the right of entry being disclosed but that, even if it had not been, it would have had no effect on the purchase or purchase price.  Ex. 2 at 2.

[9] Summary Appraisal Report of Randy Tagg ("Tagg Appraisal"), Ex. 3 at 40 (emphasis added).

[10] Transcript of Randy Tagg's Deposition, Ex. 4 at 95:8-9.

[11] Id. at 95:20-96:1.

[12] Ex. 3 at 38 (Ex. p. 22 - 23).

[13] Ex. 4 at 130:11-133:17.

1    bother to look for such transactions:

2         I haven't heard of such a thing.  One property owner giving another one permission is
         probably common, but that's not an appraisal issue that I get involved in.[14/]
3

4    Additionally, Mr. Tagg testified that he did not bother to look for sales prices or the market value of

5    temporary easements.[15/]

6         Contradicting the express statement in his report that the government's interest is for a right of

7    entry,[16/] Mr. Tagg testified at his deposition that he "didn't value a right of entry in this case.  I valued

8    an easement."  Mr. Tagg put forward the contradictory and bizarre argument that the interest acquired

9    by the government would be a non-compensable right of entry if the landowners had given the United

10   States permission to go onto the property and conduct surveying and testing; however, once the

11   landowners refused the United States a right of entry and it had to be taken in condemnation, the

12   property interest became an easement that could be valued based on leases and option agreements for

13   other uses.[17/]  Mr. Tagg explained his conception of the difference between a right of entry and an

14   easement as follows:

15        Q.    What's the difference between an easement and a right of entry in your opinion?

16        A.    A right of entry is permission.  The owner's permission generally given without
              monetary compensation.  I have never seen or heard of a right of entry being
17            condemned.  It is essentially the property owner's permission to enter the
              property, typically without payment.
18
          Q.    And how is that different from an easement?
19
          A.    An easement is a property right that's actually acquired typically with
20            consideration, monetary consideration.[18/]

21   Mr. Tagg later explained that the interest acquired by the United States could be given by permission,

22

23        [14/] Id. at 109:12-18.  By contrast, Mr. Wick testified at his deposition that contracts to purchase property
     often include a provision allowing the purchaser to inspect the property and opt out "[i]f they discover something
     that isn't conducive with what they're going to use the property for."  Ex. 1 at 18:18-19:25.
24
          [15/] Ex. 4 at 118:24-119:19.
25
          [16/] Ex. 3 at 40.
26
          [17/] Ex. 4 at 43:10-44:17; 45:19-23; 47:25-48:1; 57:23-59:14; 61:8-62:25; 85:13-22; and 108:8-109:11.
27
          [18/] Id. at 43:14-25.
28
                                           4
                                                                                   10cv1133

1  and thus be a right of entry with no compensable value, but absence of permission by the landowners

2  turned the interest acquired into an easement for which compensation must be paid:

> Q.    Well - - so if the landowners in this case had voluntarily given the same rights to the United States in this case, would it be your opinion that this - - these exact same rights described here in Schedule E would be a right of entry and not an easement?
>
> A.    It is my opinion that if you have the property owner's permission to go on their property, it doesn't necessarily need to be in writing. And it could say what this easement says, I guess. I'm not an attorney and I'm not pretending to be. I'm just saying to me a right of entry is permission, and you don't have permission, or we wouldn't be here today.[19]

9  Mr. Tagg further explained that if he was valuing a right of entry he would not use land rent to determine

10  the value of the right of entry.[20] Instead:

> A.    . . . If I was actually valuing a right of entry - - and I haven't done it in this case, and I've never done it before - - but I would first look for a signed right of entry agreement or permit. I would look to see what it said specifically. And then I would probably do a before and after approach, as outlined in the yellow book,[21] you know, how this right of entry impacts the value use - - highest and best use of the property.
>
> Q.    Why, in your opinion, would a right of - - would a before and after method be an appropriate approach to measuring the value of a right of entry?
>
> A.    Because a right of entry is essentially the property owner's permission to be on the property.
>
>        So the next thing I would look at is what does the agency have or the government have the permission to do on the property? Borings, for example.

---

[19] Id. at 61:13-24. Mr. Wick attempted to put forward the same argument half way through his deposition. After answering questions that referred to the United States' interest as a right of entry, in the middle of his deposition he testified, "It's not a right of entry. It's an easement." Ex. 1 at 63:4-5. Mr. Wick made this assertion despite the fact that the landowners specifically referred to the United States' taking in this case, in its own words, as a "Right-of-Entry for Survey and Site Assessment" in response to the United States' very first interrogatory. Ex. 5, Defendants' Responses to Plaintiff's First Set of Interrogatories, Interrogatory No. 1. Mr. Wick testified that he helped draft the response to that interrogatory. Ex. 1 at 45:1-4.

[20] Ex. 4 at 47:1-4.

[21] The "Yellow Book" is the Uniform Appraisal Standards for Federal Land Acquisitions (Chicago: Appraisal Institute, 2000). The Yellow Book states that the "before and after" method of valuation is to be used for partial acquisitions of a unitary holding. Ex. 6 at 47. Under the before and after method, "the appraiser estimates both the market value of the whole property before the government's acquisition and the market value of the remainder property after the government's acquisition. . . . The result of this method is a figure that automatically includes the value of the land actually acquired as well as any severance damages and/or special benefits to the remainder property." Id. at 50-51.

1

> Well, I guess I would look to see whether that boring activity impacted the value, the highest and best use, or the utility of the property.[22/]

2

3    Despite the statement in his report that the government's easement is a right of entry, despite his

4    acknowledgment that the use permitted to the government is "very nominal," and despite his

5    acknowledgment that he should look at the government's use and its impact on the property in order to

6    value a right of entry, Mr. Tagg chose to value the property based on exclusive use leases, leases for

7    activities not permitted under the terms of the government's taking, and option agreements.  As he

8    testified, Mr. Tagg ultimately ignored the rights that the government actually acquired and the

9    government's actual use in favor of the "land rent for that area for one year":

10
> Now, the government, what they're going to do, hopefully, is compatible with that easement.  Sure, they're going to bore.  They're going to - - whatever the easement says, that's what they're going to do.  Their agents and employees and assigns and whoever else, they're going to do that on the property.  What I've established is what is the land rent for that area for one year.[23/]

11

12

13
## II

## STATEMENT OF LAW

14

15    **A.    The Only Issue For Trial In An Eminent Domain Proceeding Is The Determination Of Just Compensation And The Trial Judge Is Given A Broad Role To Exclude Unsupported Valuation Evidence**

16

17    The sole issue for trial in an eminent domain proceeding is the determination of just

18    compensation.[24/]  Under Federal Rule of Civil Procedure 71.1(h), the trial judge is given a much broader

19    role than he is given in a conventional trial "to decide all issues, legal and factual, that may be

20    presented."[25/]    Thus, the judge is to exclude from consideration valuation testimony which is

21

22

23

_____

24    [22/] Ex. 4 at 47:13-48:7.

25    [23/] Id. at 85:15-22.

26    [24/] United States v. Reynolds, 397 U.S. 14, 19-21 (1970) (citing Federal Rule of Civil Procedure 71A(h), the predecessor to Rule 71.1(h)).

27

28    [25/] Id.

10cv1133

unsupported,[26/] particularly expert testimony.[27/]

**B.   Just Compensation Is Measured By The Market Value Of The Property Interest Acquired**

The United States has the right to acquire private property interests subject only to the requirements that such acquisitions be for a public purpose and that just compensation be paid for the property interests acquired.[28/]  This power to acquire private property interests cannot "be made a barren right by the unwillingness of property-holders to sell . . . [otherwise] the constitutional grants of power may be rendered nugatory, and the government is dependent for its practical existence upon the will of . . . a private citizen."[29/]  In line with this reasoning, any determination of just compensation cannot take into account the fact that an owner may not want to part with his land or that the particular land is needed by the government.[30/]  Rather, just compensation is measured by market value defined as "what a willing buyer would pay in cash to a willing seller" for the property interest acquired.[31/]  In determining market value, "[t]he government is to be equated to a private purchaser."[32/]  Accordingly, attention must be paid to the particular property interest acquired.  As the Supreme Court has explained:

> But the Constitution does not require a disregard of the mode of ownership – of the state of the title.  It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole.  It merely requires that an owner of property taken should be paid for what is taken from him.  It deals with person, not with tracts of land.  And the question is what has the owner lost not what has the taker

---

[26/] United States v. 100 Acres of Land, 468 F.2d 1261, 1265 (9th Cir. ) (quoting United States v. 55.22 Acres of Land, 411 F.2d 432, 434 (9th Cir. 1969)); United States v. Certain Land Situated in Detroit, 450 F.3d 205, 211 (6th Cir. 2006); United States v. 62.50 Acres of Land, 953 F.2d 886, 891 (5th Cir. 1992); United States v. 320.0 Acres of Land, 605 F.2d 762, 815-16 (5th Cir. 1979).

[27/] United States v. 33.92356 Acres of Land, 585 F.3d 1, 8 (1st 2009).

[28/] U.S. CONST. amend. V.

[29/] Kohl v. United States, 91 U.S. 367, 371 (1876).

[30/] United States v. Miller, 317 U.S. 369, 375 (1943).

[31/] Id. at 374; see also Kirby Forest Indust., Inc. v. United States, 467 U.S. 1, 10 (1984).

[32/] United States v. 499.472 Acres of Land, 701 F.2d 545, 549 (5th Cir. 1983).

1  gained.[33]

2  **C.    State Law Ordinarily Defines The Property Interest Acquired And California Law Allows For An Easement Over Property For Any Lawful Use**

3

4  The United States may acquire whatever property interest it deems necessary whether or not the

5  state recognizes the definition of the interest acquired.[34]  However, the interest acquired "will normally

6  obtain its content by reference to local law."[35]  Accordingly, reference must be made to California law

7  to determine the interest acquired in order to measure its market value.

8  Under California law, "[a]n easement is 'an interest in land created by grant or agreement,

9  express or implied, which confers a right upon the owner thereof to some profit, benefit, dominion, or

10  lawful use out of or over the estate of another.'"[36]  The terms of the document creating the easement

11  define the interest acquired.[37]  Accordingly, an easement in California can be created over property for

12

13

14

15

16

_____

17  [33] Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 195 (1910); see also United States
18  v. 237,500 Acres of Land, 236 F. Supp. 44, 51 (S.D. Cal. 1964) ("The cardinal rule which must never be
   forgotten is the oft-quoted statement of Mr. Justice Holmes in Boston Chamber of Commerce v. Boston – 'The
   question is, What has the owner lost? not, What has the taker gained?'") (internal citation omitted).
19

20  [34] United States v. Little Lake Misere Land Co., 412 U.S. 580, 604 (1973).

21  [35] United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 279 (1943); see also Adaman Mutual Water
   Co. v. United States, 278 F.2d 842, 850 (9th Cir. 1960).

22  [36] Los Angeles Terminal Land Co. v. Muir, 68 P. 308, 312 (Cal. 1902) (quoting Huyck v. Andrews, 113
23  N.Y. 81, 90 (1889)).  Similarly, The Dictionary of Real Estate Appraisal, published by the Appraisal Institute,
   defines "easement" as: "The right to use another's land for a stated purpose." THE DICTIONARY OF REAL ESTATE
   APPRAISAL, 5th ed. (Chicago: Appraisal Institute, 2010) at 63, See Ex. 7.  Mr. Tagg is a Member of the Appraisal
24  Institute (MAI).  Ex. 3 at iii.

25  [37] Winslow v. Vallejo, 84 P. 191, 192 (Cal. 1906) (citing CAL. CIV. CODE § 806).  Technically,
26  "easements" fall under Section 801 of the California Civil Code and are defined as servitudes attached to land
   granting specific interests while all other grants of interests are servitudes under Section 806.  However,
   California courts routinely refer to the granting of specific interest as easements and analyze them under Section
27  806.  See id.; see also McRose v. Bottyer, 22 P. 393, 394 (Cal. 1889); Gray v. McCormick, 84 Cal. Rptr. 3d 777,
   781 (Cal. Ct. App. 4th Dist. 2008); Los Angeles v. Howard, 53 Cal. Rptr. 274, (Cal. Ct. App. 2d Dist. 1966).

28  8

1  any lawful use, including a right of entry[38/] for surveying and site assessment.[39/]

2                                           **III**

3                                      **ARGUMENT**

4  **A.    Mr. Tagg's Assertion That The Interest Acquired By The United States Transformed From A Right Of Entry To An Easement – And That An Easement Is Distinct From A Right Of Entry – Contradicts California Law, This Court's Order Granting Possession, and Mr. Tagg's Own Appraisal Report**

5

6

7        Despite the Supreme Court's admonition in <u>Boston Chamber of Commerce</u> that the mode of

8  ownership and the state of title cannot be ignored in determining just compensation,[40/] Mr. Tagg did just

9  that.  Mr. Tagg simply did not value the property interest acquired by the United States.  Mr. Tagg's

10 ──────────────

11     [38/] In defining "easement," Black's Law Dictionary states that an example of one of the "primary recognized easements" is a "right of entry for any purpose." BLACK'S LAW DICTIONARY 527 (7th ed. 1999), <u>see</u> Ex. 8.

12

13     [39/] It is important to note that California grants to state condemning authorities the right to "enter upon property to make photographs, studies, surveys, examinations, tests, soundings, borings, samplings, or appraisals or engage in similar activities reasonably related to acquisition or use of the property for that use." CAL. CIV. PROC. CODE § 1245.010.  This right can be granted by court order if the owner of the property refuses entry. CAL. CIV. PROC. CODE § 1245.020.  This statutory right of entry for pre-condemnation purposes is not considered a taking of property for which just compensation must be paid.  <u>See</u> <u>Jacobsen v. Superior Court of the County of Sonoma</u>, 219 P. 986 (Cal. 1923); <u>County of San Luis Obispo v. Ranchita Cattle Co.</u>, 94 Cal. Rptr. 73 (Cal. Ct. App. 2d Dist. 1971).  Instead, an owner may only recover damages "[i]f the entry and activities upon property cause actual damage to or substantial interference with the possession or use of the property." CAL. CIV. PROC. CODE § 1245.060.  This right to enter onto private property for pre-condemnation purposes is not unusual. Most states grant condemnors the right to enter onto private property for surveying and site assessment.  <u>See generally</u> NICHOLS ON EMINENT DOMAIN § G32.06 "Entry Onto Private Property for Preliminary Surveys and Appraisals;" Guthrie, Peter G., "Eminent Domain: Right to Enter Land for Preliminary Survey or Examination," 29 A.L.R. 3d 1104 (2009).  In fact, in some states the right to enter onto private property for pre-condemnation purposes has been found to be an implicit right incidental to the power of eminent domain.  <u>See</u>, <u>e.g.</u>, <u>Oglethorpe Power Corp. v. Goss</u>, 322 S.E. 2d 887, 889 (Ga. 1984) ("Either by express statutory grant or, as here, by implication, a condemning body such as Oglethorpe Power has the right, incidental to its power of eminent domain, to enter private property in order to survey, inspect, and appraise the property.").  While the United States cannot take advantage of this California statute allowing condemnors to enter onto private property for pre-condemnation purposes, limited federal case law indicates that entry onto private property for survey and site assessment is such a nominal use that it has even been held to not constitute a taking under the Fifth Amendment.  <u>See</u> <u>Kincaid v. United States</u>, 35 F.2d 235, 242 (W.D. La. 1929); <u>Bonaparte v. Camden & A.R. Co.</u>, 3 F. Cas. 821, 831 (D. N.J. 1830) ("An entry on private property for the sole purpose of making the necessary explorations for location, is not taking it, the right remains in the owner as fully as before; no permanent injury can be sustained, nothing is taken from him, nothing is given to the company.").  However, the federal Uniform Real Property Acquisition Policy prevents the federal government from "intentionally mak[ing] it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property."  Accordingly, with limited federal case law to support the position that an entry by the federal government for surveying and testing is not a taking, the United States took a right of entry in this case.

27     [40/] <u>Boston Chamber of Commerce</u>, 217 U.S. at 195.

28                                              9                                    10cv1133

deposition testimony that the property interest acquired by the United States turned from a right of entry into an easement upon condemnation is contrary to this Court's order granting possession of a "right of entry."[41]  Mr. Tagg's bizarre transformation theory is also contrary to California law.  As explained above, California law allows for an easement to be created granting any lawful use over the estate of another.  Accordingly, the interest acquired by the United States – a right of entry for survey and site assessment – is merely a type of easement under California law.

The United States acquired this easement for a right of entry to determine whether the property is conducive to a long-term acquisition.  In the private market, this is akin to real estate contracts Mr. Wick testified about that allow the prospective purchaser to inspect the property and opt out of the purchase "[i]f they discover something that isn't conducive with what they're going to use the property for."[42]  In determining the value of such a right of entry, Mr. Tagg could have looked at such private purchase contracts or spoken to market participants to determine the market value for such rights of entry.  Instead, Mr. Tagg was content with remaining wilfully ignorant, testifying that with regard to rights of entry between private parties:

> I haven't heard of such a thing.  One property owner giving another one permission is *probably common*, but that's not an appraisal issue that I get involved in.[43]

In other words, Mr. Tagg did not bother to find out the market value of a right of entry even though the granting of such a right is, in his own words, "probably common."  However, his testimony that a right of entry is "generally given without monetary compensation"[44] reveals that Mr. Tagg actually does know that such rights have very little market value.  This is the more likely reason Mr. Tagg did not bother to "get involved in" the market value of a right of entry.  Mr. Tagg's decision to ignore this market

---

[41] Doc. No. 7.

[42] Ex. 1 at 18:18-19:25

[43] Ex. 4 at 109:15-18.

[44] Id. 43:16-18, 44:8-10, 58:1-2.

10cv1133

evidence[45/] allowed him to avoid valuing the actual interest acquired by the United States and come up with the bizarre theory that an otherwise valueless right of entry becomes a $500,000 easement upon condemnation – i.e., upon the landowners' refusal to sell.  This theory is at odds with the Fifth Amendment and federal condemnation law which requires only that a landowner be made whole, not provided a bonanza, if he refuses to part with his land.

Adding insult to injury, Mr. Tagg's testimony that the interest acquired by the United States is not a right of entry contradicts the very words he wrote in his own report.  Mr. Tagg simply cannot hide from what he wrote in his report:

> Again, the estate taken by the government over the Subject land is a temporary, assignable easement "..... consisting of the right to enter in, on, over and across ..... to survey, make borings, and conduct other investigatory work ....".  ***This right of entry for surveys and evaluations*** includes the entire 242.93-acre Subject property.[46/]

Mr. Tagg admitted that the taking is a right of entry.  More importantly, the Court's order granting possession is for a right of entry and under California law the taking is for a right of entry.  Accordingly, Mr. Tagg was obligated to value a right of entry.  His failure to do so means that his opinion must be excluded from consideration.

**B**.    **Mr. Tagg's Failure To Determine The Market Value For A Right Of Entry For Surveys And Evaluations Results In The United States Not Being Equated To A Private Purchaser And Thus His Ultimate Opinion Of Value Does Not Reflect What A Willing Buyer Would Pay A Willing Seller For The Interest Acquired By The United States**

As explained above, it is black letter law in federal condemnation cases that market value is "what a willing buyer would pay in cash to a willing seller" for the property interest acquired[47/] and that "[t]he government is to be equated to a private purchaser."[48/]  Mr. Tagg's testimony that rights of entry

---

[45/] Mr. Tagg also chose to ignore California law providing for pre-condemnation right of entry when he testified that, "I have never seen or heard of a right of entry being condemned."  Id. at 43:18-19.

[46/] Ex. 3 at 40 (emphasis added).

[47/] Kirby Forest Indust., Inc., 467 U.S. at 10; Miller, 317 U.S. at 374.

[48/] 499.472 Acres of Land, 701 F.2d at 549.

are "generally given without monetary compensation,"[49] and that such conveyances are "probably common" but not something he "get[s] involved in"[50] reveals that he did not equate the United States with a private purchaser.  Mr. Tagg's opinion of value, based on leases for parking, storage, agriculture, and skydiving, as well as option agreements, simply does not reflect what a willing buyer would pay a willing seller for what a property interest that only permits, in Mr. Tagg's own words, "very nominal use."[51]  Simple common sense would lead to the conclusion that "very nominal use" would cost a "very nominal amount," not half a million dollars.

Furthermore, Mr. Tagg's transformation of the estate taken from a worthless right of entry to a $500,000 easement upon condemnation does not treat the parties in this case as a willing buyer and a willing seller.  As discussed above, the power of eminent domain and the determination of just compensation are not contingent upon the willingness of a landowner to part with his land.  Rather, just compensation is based on what a hypothetical willing buyer and hypothetical willing seller would pay for the property interest in the open market.[52]  Directly contradicting this black letter law, the basis for Mr. Tagg's valuation opinion is that the Defendants' refusal to sell, and the United States thus having to condemn, transformed the estate taken from a worthless right of entry to a $500,000 easement.  Such an opinion is without support in the law of federal eminent domain.  Accordingly, Mr. Tagg's opinion of value must be excluded.

**C.    Mr. Tagg Completely Ignored The Impact Of The Taking As A Check On His Opinion of Value**

As this Court has noted, the "cardinal rule which must never be forgotten" in eminent domain cases "is what has the owner lost not what has the taker gained."[53]  Mr. Tagg acknowledged that the

---

[49] Ex. 4 at 43:16-18, 44:8-10, 58:1-2.

[50] Id. at 109:15-18.

[51] Id. at 95:8-9.

[52] Kirby Forest Indust., Inc., 467 U.S. at 10; Miller, 317 U.S. at 374; see also Ex. 3 at ix (definition of market value).

[53] 237,500 Acres of Land, 236 F. Supp. at 51 (quoting Boston Chamber of Commerce, 217 U.S. at 195).

government's permitted use is "very nominal" but did not even bother to assess the impact of the taking on market value.  As discussed above, Mr. Wick, the landowners' agent, testified that during the one-year right of entry he was on the property "once or twice a week" and during that time he "may have" seen a government surveyor on the property "[n]ot more than once" and does not even know how many times surveyors for the government entered onto the property or where they conducted surveying and testing on the property.[54]  Mr. Wick further testified that he never sought approval from the government to enter onto the property because he understood that the government did not have the right to exclude him.  The only restriction Mr.Wick believed was placed on the use of the property was that he could not "hypothetically" sell it with the right of entry in place; however, he in fact sold a portion of the property with the right of entry in place to CCA Western Properties and the right of entry did not effect the purchase.[55]  Mr. Tagg completely ignored these facts.  While a taking is to be valued prospectively, Mr. Tagg made absolutely no effort to determine what the landowners lost in this case, even as a check on his opinion of value.[56]

Mr. Tagg's testimony, therefore, that had he been valuing a right of entry he would have used the before and after method to determine "how this right of entry impacts the value" is particularly

---

[54] Ex. 1 at 50:25-52:7.

[55] Id. at 23:21-24, 52:8-53:10.

[56] The leading treatise on eminent domain, Nichols on Eminent Domain, states that New York has by far the most cases of takings of temporary easements and, therefore, New York is often looked to for guidance on valuing temporary easements. NICHOLS ON EMINENT DOMAIN § G32.08[10][a]. While the general rule is that rental value is used to measure temporary easements, New York courts have held that temporary easements involving only "incidental and contingent use" may be valued retrospectively to determine if there has been any loss to the owner. Id. at § G32.08[10][f].  In overturning an award based on rental value for a temporary easement, the Court of Appeals of New York held that, "There should be no recovery, however, where there is no loss.  In the case at bar, it is undisputed that A & P remained in complete possession of the premises and carried on business as usual. . . .  We, therefore fail to see how the claimants were injured during the period in questions and, consequently, the award for this period should be vacated." Great Atlantic & Pacific Tea Co. v. State of New York, 238 N.E.2d 705, 712 (N.Y. 1968) (citing Pomeroy v. State of New York, 18 Misc. 2d 377). In Pomeroy, the Court of Claims of New York had held that, "It is unreasonable that a party should be compensated for the taking of a temporary easement when, in fact, it has not interfered with his enjoyment and use of the property subject thereto.  Damage is based on loss and it is claimant's obligation to show such loss." Pomeroy v. State of New York, 18 Misc. 2d 377, 379-80 (N.Y. Ct. Cl. 1959) (citing Boston Chamber of Commerce, 217 U.S. at 195).

1  revealing.[57/]  Mr. Tagg has essentially admitted that the principles and methods he used and applied to

2  the facts in this case completely failed to take into account the actual impact of the United States' taking

3  on the market value of the property.  In other words, Mr. Tagg failed to heed Mr. Justice Holmes' oft-

4  quoted rule that in condemnation "the question is what has the owner lost not what has the taker

5  gained."[58/]  Mr. Tagg's use of rental values of incomparable property interests simply does not measure

6  the loss to the owner.  The uses permitted to the government under its right of entry for survey and site

7  assessment do not equate, for example, to leases for parking, auto storage, or farming.  The impacts are

8  not even close.  Mr. Tagg's use of these leases and other option agreements is nothing but a blatant

9  attempt to employ an inappropriate methodology to ratchet up value.  Mr. Tagg's transparent attempt

10  to turn the government's innocuous right of entry for survey and site assessment into the equivalent of

11  an agricultural or parking lease makes a mockery of the Fifth Amendment guarantee of just

12  compensation.  That guarantee is not the equivalent of a winning lottery ticket — it does not render an

13  otherwise valueless property interest into a pot of gold.[59/]  Mr. Tagg's testimony must be excluded.

14                                        **IV**

15                                  **CONCLUSION**

16           For the foregoing reasons, the United States respectfully requests that the Court exclude the

17  valuation testimony of Mr. Tagg.

18

19  Dated: November 10, 2011                    Respectfully submitted,

20                                              LAURA E. DUFFY
                                                United States Attorney

21                                              s/Justin A. Okun
22                                              JUSTIN A. OKUN
                                                Trial Attorney
23                                              Attorneys for Plaintiff
                                                United States of America

24

25      [57/] Ex. 4 at 47:1-48:7.

26      [58/] Boston Chamber of Commerce, 217 U.S. at 195; 237,500 Acres of Land, 236 F. Supp. at 51.

27      [59/] The Fifth Amendment "does not [even] guarantee [a landowner] a return on his investment." Powelson, 319 U.S. at 285.

28                                        14                              10cv1133