# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 10-cv-1133 – BEN (CAB) |
| Plaintiff, | **ORDER:** |
| | **(1) ADOPTING REPORT AND RECOMMENDATION,** |
| | **[Doc. No. 57];** |
| vs. | **(2) GRANTING MOTION TO EXCLUDE THE VALUATION TESTIMONY OF DAVID WICK,** |
| | **[Doc. No. 51];** |
| | **(3) DENYING AS MOOT *EX PARTE* APPLICATION TO STRIKE DAVID WICK'S VALUATION TESTIMONY,** |
| 242.93 ACRES OF LAND MORE OR LESS, SITUATED IN SAN DIEGO COUNTY, STATE OF CALIFORNIA; KYDDLF & RDLFGFT #1, LLC; and INTERNATIONAL INDUSTRIAL PARK, INC., | **[Doc. No. 48]; and** |
| | **(3) DENYING MOTION TO EXCLUDE RANDY TAGG'S VALUATION TESTIMONY,** |
| Defendants. | **[Doc. No. 50].** |

Presently before the Court in this condemnation case are Plaintiff United States's Motion to Exclude the Valuation Testimony of David Wick, [Doc. No. 51], and Motion to Exclude Randy Tagg's Valuation Testimony, [Doc. No. 50]. Having considered the parties' arguments, and for the reasons set forth below, the Court **GRANTS** the motion to exclude the valuation testimony of Mr. Wick and **DENIES** the motion to exclude the valuation testimony of Mr. Tagg.

**BACKGROUND**

On May 25, 2010, the United States filed a Complaint in Condemnation and a Declaration of Taking, condemning a temporary right to enter, survey, and test 242.93 acres of land in Otay Mesa, California. The taking related to the possible future acquisition of a portion of the 242.93 acres, was to be limited to a period of twelve months, and was not meant to exclude the landowners from the property. Specifically, the property interest to be taken was described as follows:

> The estate taken is a temporary, assignable easement beginning on the date possession is granted to the United States and ending 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule "C" to survey, make borings, and conduct other investigatory work for the purposes described in Schedule "B" and to access adjacent lands; including the right to trim or remove any vegetative or structural obstacles that interfere with said work; reserving to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired; subject to minerals and rights appurtenant thereto, and to existing easements for public roads and highways, public utilities, railroads and pipelines.

(Compl., Schedule "E" [Doc. No. 1].) Concurrently with the Complaint, the United States deposited $100.00 with the Clerk of Court as the estimated "just compensation" for the taking. [Doc. No. 3.] On June 2, 2010, this Court granted possession to the United States. [*See* Doc. No. 6.]

The case will shortly go to trial on the issue of just compensation.[1] Defendants intend to offer valuation testimony of David Wick, the property manager of the properties owned by Defendants in this action, and Randy Tagg, a real estate appraiser retained to appraise the value of the condemned easement. Presently before the Court are the United States's motions to exclude both valuation testimonies. The United States previously attempted to strike the testimony of Mr. Wick, arguing that he was not properly disclosed as an expert witness. [*See* Doc. No. 35.] On October 24, 2011, Magistrate Judge Cathy Ann Bencivengo denied the motion to strike, concluding that although Mr. Wick could not testify as an expert witness, it was unclear whether as the owner or property manager of the lands in question, he could provide a lay opinion as to the value of the property interest taken under Federal Rule of Evidence ("FRE") 701. [Doc. No. 42.] Judge Bencivengo ordered that Mr. Wick be made available for a second deposition, limited to his valuation opinion and his foundation

---

[1] On November 18, 2011, Defendant International Industrial Park, Inc. ("IIP") filed a timely request for a jury trial pursuant to Federal Rule of Civil Procedure 71.1(h)(1). On February 17, 2012, the Court denied the United States's motion to strike IIP's jury demand. [Doc. No. 75.]

1 for that opinion. [*Id.*] The second deposition of Mr. Wick was taken on November 2, 2011.

2 The United States then filed motions before both Judge Bencivengo and the undersigned to exclude Mr. Wick's valuation testimony. [Doc. Nos. 48, 51.] On December 2, 2011, Judge Bencivengo issued a Report and Recommendation, recommending that Mr. Wick be precluded from providing opinion testimony regarding the market value of the condemned property. [Doc. No. 57.] The United States also filed a motion before the undersigned to exclude the valuation testimony of Mr. Tagg. [Doc. No. 50.] Defendants filed oppositions to each motion, and the United States replied. The Court decides both motions before it without a hearing pursuant to Civil Local Rule 7.1(d)(1).

**DISCUSSION**

**I.     Valuation testimony of Mr. Wick**

The United States moves to exclude the valuation testimony of Mr. Wick because Defendants failed to properly disclose him as an expert as required by Federal Rule of Civil Procedure 26(a) and the scheduling order in this case, and because his valuation opinion exceeds lay opinion testimony allowed under FRE 701. In response, Defendants contend that, as the property manager for Defendants, Mr. Wick may properly testify as to the value of the condemned property under FRE 701. Mr. Wick's proposed testimony is that, based on his position as the property manager and the negotiations of numerous similar transactions over his 30-year career, the fair market value he would have asked for the condemned easement is $739,200. (*See* Wick Decl. ¶ 4 [Doc. No. 58-1].)

FRE 701 provides that a witness not testifying as an expert may provide testimony in the form of an opinion as long as it is: (a) "rationally based on the witness's perception," (b) "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and (c) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The Advisory Committee Note to the 2000 Amendments to FRE 701 specifies that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." However, to be admissible under FRE 701, the owner's or officer's lay opinion as to the value of the property must be based on that witness's "particularized knowledge" as a result of his position, and not on "experience, training or specialized knowledge within the realm of an expert." FRE 701, Advisory

Committee Note to 2000 Amendments; *see also Fourth Investment LP v. United States*, No. 08cv110-BTM (BLM), 2011 WL 227564, at \*\*1-2 & n.1 (S.D. Cal. Jan. 21, 2011) (admitting an owner's valuation opinion under FRE 701 because it was based on the particularized knowledge and "substantial personal familiarity" with the property (citation omitted)); *Stoebner Holdings, Inc. v. Automobili Lamborghini S.P.A.*, Civil No. 06-00446 JMS/LEK, 2007 WL 4230824, at \*3 (D. Haw. Nov. 30, 2007) (collecting authority for the proposition that "the owner or officer of a business may testify as to the value or profits of a business" as a lay witness under FRE 701).

In this case, having reviewed the issue *de novo*, the Court agrees with Judge Bencivengo's recommendation that Mr. Wick's valuation opinion is based not only on his "particularized knowledge" of the lands at issue, but also largely on his "experience, training or specialized knowledge" acquired during his 30 years of experience in the real estate industry and while managing other properties. (*See* Report and Recommendation, at 2 [Doc. No. 57].) As Judge Bencivengo properly noted, the deposition transcript "illustrates that Mr. Wick did independent research to formulate his opinion, relied on his 30 years of experience in the real estate industry, and referenced documents involving transactions not specific to the parcel at issue, but rather related to his specialized knowledge in negotiating land transactions with third parties." (*Id.*; *see also* Wick Depo. 122-128 (Nov. 2, 2011), attached as Exh. 2 to Okun Decl. [Doc. No. 51-4].) As such, Mr. Wick's valuation opinion is beyond the scope of FRE 701, and should have instead been offered as an expert opinion pursuant to FRE 702.[2] *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) (concluding that owner's valuation testimony as to the value of the insured building should not have been admitted as lay opinion testimony under FRE 701 where, *inter alia*, the witness's calculations "were based in part on his professional experience in real estate"); *United States v. Smith*,

---

[2] The Advisory Committee Notes to the Federal Rules of Evidence appear to contemplate that a landowner's opinion as to the value of the property could be offered under either FRE 701 or FRE 702, presumably depending on the level of "experience, training or specialized knowledge" that went into formulating the opinion. *See* FRE 702, Advisory Committee Note to 1972 Proposed Rules ("The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge. Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.' Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values.").

1  640 F.3d 358, 365 (D.C. Cir. 2011) ("[K]nowledge derived from previous professional experience
2  falls squarely 'within the scope of Rule 702' and thus by definition outside of Rule 701." (citation
3  omitted)); *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244-46 (9th Cir. 1997) (holding it was
4  abuse of discretion to admit agent's testimony about whether defendant's actions were "consistent
5  with those of an experienced drug trafficker" where the agent had not been qualified as an expert
6  witness and where the agent's opinion was based in part "upon the training that he had at the DEA
7  Academy").

8        The Court also agrees with Judge Bencivengo's recommendation that Mr. Wick's opinion
9  cannot be offered as expert opinion under FRE 702 because Defendants failed to comply with Federal
10 Rule of Civil Procedure 26(a) and this Court's scheduling order.  *See* FED. R. CIV. P. 26(a)(2)(A)
11 (requiring that a party "disclose to the other parties the identity of any witness it may use at trial to
12 present evidence under Federal Rule of Evidence 702, 703, or 705"); FED. R. CIV. P. 26(a)(2)(B)
13 (requiring a written report from any witness "retained or specially employed to provide expert
14 testimony in the case or one whose duties as the party's employee regularly involve giving expert
15 testimony"); FED. R. CIV. P. 26(a)(2)(C) (noting that *even if* the expert witness is not required to
16 provide a written report, the disclosure must still state "the subject matter on which the witness is
17 expected to present evidence under Federal Rule of Evidence 702, 703, or 705," and "a summary of
18 the facts and opinions to which the witness is expected to testify").  In this case, the Court ordered that
19 "[o]n or before **May 18, 2011**, all parties shall exchange with all other parties a list of all expert
20 witnesses expected to be called at trial pursuant to Fed. R. Civ. P. 26(a)(2)(A)."  (Case Management
21 Conference Order Regulating Discovery and Other Pretrial Proceedings ¶ 2 [Doc. No. 26].)  The
22 parties were allowed to supplement their expert designations by **June 1, 2011**.  (*Id.*)  Each expert
23 witness designated by a party was required to prepare a written report or disclosure pursuant to
24 Federal Rule of Civil Procedure 26(a)(2)(B) or (C) **no later than August 15, 2011**.  (*Id.* ¶ 3.)
25 Defendants failed to comply with all of these deadlines as to Mr. Wick.  Accordingly, the Court adopts
26 Judge Bencivengo's recommendation that Mr. Wick cannot provide an expert opinion in this case as
27 to the value of the subject properties.  *See* FED. R. CIV. P. 37(c)(1) ("If a party fails to provide
28 information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [the disclosure] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) ("In determining whether this sanction should be imposed, the burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless.").

## II.     Valuation testimony of Mr. Tagg

The United States also moves to exclude valuation testimony of Mr. Tagg on the basis that it is based on an unsupported theory that the property interest acquired by the United States somehow transformed from a valueless "right of entry" to an "easement" worth $500,000.00 merely because of Defendants' refusal to acquiesce in the taking. The United States further argues that Mr. Tagg failed to look to comparable leases in making his calculations and that he improperly failed to consider the actual impact of the taking on the lands in question. In response, Defendants assert that Mr. Tagg's valuation opinion calculating the value of the temporary easement tracks the language of the Complaint in this case, that Mr. Tagg properly made his calculations based on the twenty one comparable leases, and that he properly valued the easement at the time of the acquisition.

The Fifth Amendment requires the United States to pay "just compensation" whenever it takes private property for public use. U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation."). What constitutes "just compensation" varies from case to case, and therefore should be "carefully tailored to the circumstances of each particular case." *Otay Mesa Prop., L.P. v. United States*, — F.3d —, 2012 WL 206142, at *8 (Fed. Cir. 2012); *see also Kimball Laundry Co. v. United States*, 338 U.S. 1, 20 (1949) (explaining that "computation of the compensation due" should be consistent "with an approach which seeks with the aid of all relevant data to find an amount representing value to any normally situated owner or purchaser of the interests taken"). Compensation should be based on an assessment of what precisely the government takes from a landowner. *United States v. Gen. Motors Corp.*, 323 U.S. 373, 382 (1945); *see also Boston Chamber of Commerce v. City of Boston*, 217 U.S. 189, 195 (1910) ("[T]he question is, What has the

1  owner lost? not, What has the taker gained?"). The landowner "is entitled to be put in as good a
2  position pecuniarily as if his property had not been taken. He must be made whole but is not entitled
3  to more." *Olson v. United States*, 292 U.S. 246, 255 (1934).

4  Courts recognize both temporary and permanent takings, and "use different methods to
5  determine just compensation owed, depending on the temporal classification of a taking." *Otay Mesa*
6  *Prop.*, 2012 WL 206142, at *3 (discussing the distinction). To be classified as a "temporary" taking,
7  either there must be a specific end date contemplated, or it must be shown that the parties knew or
8  intended from the outset that the taking be temporary in nature. *See id.* at *5 (concluding that the
9  easement was not temporary, although it contemplated that it could be unilaterally terminated by either
10 party, where there was no specific end date specified and there was no indication the United States
11 "intended that its easement be temporary"); *Wyatt v. United States*, 271 F.3d 1090, 1097 n.6 (Fed. Cir.
12 2001) ("The essential element of a temporary taking is a finite start and end to the taking."). The
13 duration of the taking is pertinent to the determination of "just compensation," and not to the issue of
14 whether a taking has occurred.[3] *Otay Mesa Prop.*, 2012 WL 206142, at *3.

15 In this case, the Court finds no just reason at this time to exclude the valuation opinion of Mr.
16 Tagg. Consistent with the Complaint in this action, Mr. Tagg indicated that the purpose of his
17 appraisal was "to provide a market value estimate for private real property rights relating to a
18 temporary *easement* by The United States of America." (*See* Randy Tagg's Summary Appraisal
19 Report, at 32, 35 [Doc. No. 60-1]; *accord* Tagg Depo. 36:7-9 (Sept. 15, 2011) [Doc. No. 59-2]; *see*
20 *also* Compl., Schedule "E" ("The estate taken is a temporary, assignable easement beginning on the
21 date possession is granted to the United States and ending 12 months later, consisting of the right of
22 the United States, its agents, contractors, and assigns to enter in, on, over and across the land . . . .").)

23 The United States's argument that Mr. Tagg's opinion must be excluded because he referred
24 to the property right condemned as an "easement," instead of a "right of entry," is unpersuasive. As
25 noted above, the Complaint expressly refers to the estate being condemned as an "easement." (*See*
26 Compl., Schedule "E".) Mr. Tagg's appraisal is also consistent with the Black's Law Dictionary's

27

28  [3] In the present case, because the condemned easement contemplated a twelve-month duration, (*see* Compl., Schedule "E"), there is no dispute that it constitutes a "temporary" taking.

1 definition of an "easement." *See* BLACK'S LAW DICTIONARY 585-86 (9th ed. 2009) (defining an
2 "easement" as "[a]n interest in land owned by another person, consisting in the right to use or control
3 the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to
4 a public road)."). Finally, the Court is not persuaded by the United States's argument that Mr. Tagg's
5 testimony at his deposition amounted to some "bizarre theory that an otherwise valueless right of entry
6 becomes a $500,000 easement upon condemnation." (*See* USA's Mem. of P. & A. ISO Mot. to
7 Exclude Randy Tagg's Valuation Testimony, at 11.) Rather, a review of Mr. Tagg's deposition makes
8 clear that he merely expressed his view that hypothetically, Defendants could have voluntarily (and
9 presumably without consideration) given the same property rights to the United States in the form of
10 an informal "right of entry," rather than a condemned "easement." (*See* Tagg Depo. 61-62.)

11 Similarly, the Court is not persuaded by the United States's contention that the comparable
12 leases that Mr. Tagg relied upon are not really "comparable." The leases Mr. Tagg relied upon
13 included short-term leases for truck parking, open storage, and skydiving and parachute training. (*See*
14 Tagg's Appraisal Report, at 38.) Whether any of these leases are comparable to the property interest
15 in this case—i.e., an easement for a right of entry to survey and test—must be determined on a lease-
16 by-lease basis. *See United States v. 4.85 Acres of Land, More or Less*, 546 F.3d 613, 619 (9th Cir.
17 2008) ("[A] trial court should make separate findings of the comparability of each of the proffered
18 comparable properties to the condemnee's property by comparing them to the condemned property
19 in terms of their respective characteristics ... geographic proximity ... and the closeness in time of the
20 sales." (citation and internal quotation marks omitted)). Moreover, "'except in unusual instances,'
21 differences in the location, characteristics, and timing of potential comparable sales should 'go to the
22 weight of the evidence rather than ... to the admissibility.'" *Id.* (citation omitted). The United States
23 has proffered no reason why the Court should disregard the above cardinal principal in this case.[4]

---

25 [4] The United States's reliance on the Federal Circuit's recent decision in *Otay Mesa Property*,
26 2012 WL 206142, is misplaced. Although that decision concerned an inverse condemnation case involving the same defendants as in this case, the issue before the court was entirely different. In that
27 case, the Court of Federal Claims concluded that the United States's installation of seismic sensors along the defendants' property was a temporary taking and awarded the landowners a just
28 compensation in the amount of $3,043,051, based on averaging the monthly rental for a skydiving training lease and a parachute training lease. *Id.* at \*\*2-3. The Federal Circuit vacated in part and remanded, holding that the taking was "permanent," instead of "temporary." *Id.* at \*\*5-7. Next,

1. Accordingly, the Court declines to exclude Mr. Tagg's valuation opinion at this time on this basis.

2. Finally, the Court rejects the United States's argument that Mr. Tagg's valuation opinion should be excluded because it was based on improper valuation methodology. The Supreme Court has explained that "just compensation" means "in most cases the fair market value of the property on the date it is appropriated. Under this standard, the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) (internal citations and quotation marks omitted). The valuation method, however, depends on whether the taking is temporary or permanent. *See Otay Mesa Prop.*, 2012 WL 206142, at *3. " The usual measure of just compensation for a temporary taking is the fair rental value of the property for the period of the taking." *Id.* at *4; *see also Kimball Laundry*, 338 U.S. at 7 (holding that, in a temporary taking case, "the proper measure of compensation is the rental that probably could have been obtained," and not "the difference between the market value of the fee on the date of taking and that on the date of return"); INTERAGENCY LAND ACQUISITION CONFERENCE, UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS 64 (2000) ("The appropriate measure of value for the acquisition of a temporary easement is the rental value for the term of the easement, adjusted as may be appropriate for the rights of use, if any, reserved to the owner."). In the case of a permanent taking, the owner is entitled to the fair market value of his property at the time of the taking. *Otay Mesa Prop.*, 2012 WL 206142, at *4 (citing *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 474 (1973)). Where the property interest permanently taken is an easement, the "conventional method" in valuing the interest acquired by the government is "by taking the difference between the value of the property before and after the Government's easement was imposed." *United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 632 (1961).

In this case, Mr. Tagg properly attempted to determine what the rental value would be for comparable leases over a comparable period of time. Moreover, he properly looked at what the value

---

because the valuation methods are different for "temporary" and "permanent" takings, the Federal Circuit concluded that the lower court erred in its prior damages calculation when it awarded compensation based upon the rental value of the property for skydiving and parachute training. *Id.* at *8. Notably, however, the Federal Circuit expressed concern with the United States's argument that a "permanent" taking might result in less compensation to the landowner than would have a "temporary" taking. *Id.* The court concluded that the case before it "aptly demonstrate[d] that 'just compensation' should be carefully tailored to the circumstances of each particular case." *Id.*

1  of those leases would be *at the time the taking took place*, rather retrospectively. *See Kirby Forest*
2  *Indus.*, 467 U.S. at 10. Thus, contrary to the United States's arguments, the fact that Mr. Tagg failed
3  to consider the *actual impact* of the taking on the property does not render his valuation opinion
4  inadmissible. At most, this factor goes only to the *weight* of Mr. Tagg's valuation opinion, rather than
5  its *admissibility*. *See 4.85 Acres of Land, More or Less*, 546 F.3d at 619. Accordingly, the United
6  States's motion to exclude Mr. Tagg's valuation opinion is denied.

### III.  Supplemental briefing

It appears the parties still disagree as to the appropriate method that should be utilized to value the just compensation due to Defendants for the taking. As previously noted, where a temporary taking is at issue, the default approach has been to value the taking at the fair rental value of the property for the period of the taking, adjusted as necessary for the rights of use, if any, reserved to the owner, as well as for any actual damage to the property. *See, e.g.*, *Kimball Laundry*, 338 U.S. at 7; *Otay Mesa Prop.*, 2012 WL 206142, at *4; INTERAGENCY LAND ACQUISITION CONFERENCE, UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS 64. However, the Court has discretion to tailor the valuation method to the particular circumstances of each case. *See Kimball Laundry*, 338 U.S. at 20; *Otay Mesa Prop.*, 2012 WL 206142, at *8. At the end of the day, the landowner "is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." *Olson*, 292 U.S. at 255; *see also Boston Chamber of Commerce*, 217 U.S. at 195 ("[T]he question is, What has the owner lost? not, What has the taker gained?"). Accordingly, the parties are **ORDERED** to provide supplemental briefing by **Monday, March 5, 2012** addressing the valuation method to be employed in this case. The briefs shall not exceed **10 pages** each. Each party may file a responsive brief not exceeding **5 pages** by **Monday, March 12, 2012**. Unless ordered otherwise, this issue will be decided without oral argument.

///
///
///
///
///

///

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** Judge Bencivengo's Report and Recommendation, [Doc. No. 57], and **GRANTS** the United States's motion to the exclude valuation testimony of Mr. Wick, [Doc. No. 51]. The United States's *Ex Parte* Application for Order Striking David Wick's Opinions of Value, [Doc No. 48], is **DENIED AS MOOT**. The Court also **DENIES** the United States's motion to the exclude valuation testimony of Mr. Tagg, [Doc. No. 50].

**IT IS SO ORDERED.**

**DATED:  February 22, 2012**

**Hon. Roger T. Benitez
United States District Judge**