Roger J. Marzulla
California State Bar No. 51113
Marzulla Law, LLC
1150 Connecticut Avenue, NW
Suite 1050
Washington, DC 20036
(202) 822-6760 (telephone)
(202) 822-6774 (facsimile)
roger@marzulla.com

Bradley L. Jacobs
Attorney At Law
California State Bar No. 162761
501 W. Broadway
Suite 1650
San Diego, California 92101
(619) 233-9503 (telephone)
(619) 233-3730 (facsimile)
attorneybradjacobs@hotmail.com

Counsel for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

_____
                                                        )
The United States of America,              )
                                                        )   Case No. 10-CV-1133 BEN (KSC)
            Plaintiff,                              )
                                                        )   **DEFENDANTS' MEMORANDUM OF**
        v.                                         )   **POINTS AND AUTHORITIES IN**
                                                        )   **SUPPORT OF MOTION IN LIMINE**
242.93 Acres of Land, More or Less,  )   **TO EXCLUDE INADMISSIBLE**
Situate in San Diego County, State of  )   **TESTIMONY OF STEPHEN ROACH**
California, and KYDDLF & RDLFGFT )
#1, LLC, et al.,                                 )
                                                        )
            Defendants.                        )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE INADMISSIBLE TESTIMONY OF STEPHEN ROACH**

Defendant Landowners KYDDLF & RDLFGFT #1, LLC, Rancho Vista Del Mar, D&D Landholdings, OMC Properties, LLC, and International Industrial Park move this

Court to exclude the inadmissible opinion of the Government's appraiser, Stephen Roach, and the inadmissible evidence on which it is based, at the jury trial of this case presently scheduled for October 30, 2012. In concluding that the Government's easement over 242.93 acres of Landowners' highly valuable Otay Mesa property has no value at all, Roach:

- Did not use any recognized appraisal methodology;

- Based his conclusion on non-comparable rights-of-entry that (unlike the property interest to be valued here) are not easements at all; and

- Relied on other incompetent and irrelevant evidence.

**I.      Standard of Review**

A motion in limine allows a court to exclude "prejudicial or objectionable evidence before it is presented to the jury."[1] The advantages of motions in limine are the ability "to avoid the futile attempt to undo the harm done where jurors have been exposed to damaging evidence,"[2] and to "streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues."[3] Because "'[a] motion in limine is designed to narrow evidentiary issues for trial, not resolve factual disputes or weigh evidence,'"[4] testimony and evidence that are not relevant are properly excluded before trial.[5]

The trial judge thus uses motions in limine as part of his "gatekeeping role" under

---

[1] STEPHANIE HOIT LEE & DAVID N. FINLEY, FEDERAL MOTIONS IN LIMINE § 1.1 (2010); *see also United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).
[2] *Id.*
[3] *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).
[4] *Sigma Tool & Mach. v. Nagayama Elec. Indus. Co.*, 2002 U.S. Dist. LEXIS 28185, at *5 (D.D.C. 2002) (quoting *Johnson v. Inland Steel Co.*, 140 F.R.D. 367, 371 (N.D. Ill. 1992)); *see also* Fed. R. Evid. 402.
[5] *See United States v. Manning*, 509 F.3d 1230, 1234 (9th Cir. 1974); *Paschal v. Flagstar Bank*, 295 F.3d 565, 581 (6th Cir. 2002).

2

Federal Rule of Evidence ("FRE") 401(a) to determine whether expert testimony is both relevant and reliable in order to be admissible.[6] If the Court determines that the expert opinion testimony does not meet these standards, then the Court should exclude that evidence from use at trial.[7]

According to FRE 401, "[r]elevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the liability determination more or less probable than it would be without the evidence.[8] Relevance is comprised of two fundamental components: materiality and probative value. If the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial. Probative value, on the other hand, deals with tendency of the evidence to establish the proposition that it is offered to prove.[9] FRE 702 further provides that expert testimony is admissible only if the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."[10] If expert testimony does not relate to any issue in the case, then it is inadmissible.[11]

Expert opinion must not be confusing or misleading, nor collateral to issues in the case. Under FRE 403, "relevant evidence may be excluded if its probative value is

---

[6] *See Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).
[7] *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-44 (1997) (affirming exclusion of unreliable expert opinion testimony).
[8] Fed. R. Evid. 401; *see also United States v. Abel,* 469 U.S. 45, 47 (1984).
[9] *See generally* McCormick, *Evidence* §185 (5th ed. 2000).
[10] Fed. R. Evid. 702.
[11] *Daubert* 509 U.S. at 591("Expert testimony which does not relate to any issue in the case is not relevant and . . . non-helpful.") (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* 702–18 (1988)); *see also United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."); *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (testimony by an expert on an irrelevant issue is not helpful to the jury and should be excluded).
[9] *PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 469 (2006).

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time . . . ."[12] Expert opinion that has the potential to confuse or mislead the jury as to the issues should be excluded.[13]

## II. Roach's testimony regarding the extent of the Government's use of the easement should be excluded

Roach's expert report states:

> Over the roughly 12-month period, the Department of Homeland Security's contractors reportedly made two trips for field reconnaissance, six trips for field review, three trips to set panels for aerial mapping, for geotechnical investigation, for a site visit of proposed culvert location, and four trips for a land survey. Most trips were reportedly made with one vehicle, with some trips perhaps using two.[14]

The extent of governmental use of the easement is, however, irrelevant and inadmissible. For, having acquired this easement by condemnation, the Government is constitutionally obligated to pay for the property right it took—whether it used that property right or not.[15] "Rights acquired, and not the intended use of those rights, is the measure of the landowner's compensation."[16]

Because the property has the same value whether the Government used it or not, any testimony by Roach (or any other witness) regarding the nature and extent of the Government's use of the easement should be excluded as irrelevant.

---

[12] Fed. R. Evid. 403.
[13] *See, e.g., Hamling v. United States*, 418 U.S. 87, 124-27 (trial court did not abuse its discretion by excluding evidence on the basis that it was largely irrelevant, and to the extent it was relevant, it was confusing to the jury); *Barrett v. Orange Cnty. Human Rights Comm'n*, 194 F.3d 341, 347 (2d Cir. 1998) (trial court properly barred evidence that would have confused the issues by raising collateral matters).
[14] Stephen D. Roach & Cody F. Knox, Appraisal Report, *US v. 242.93 Acres* Temporary Right of Entry San Diego County, California p. 46 (2011).
[15] *See United States v. Miller*, 317 U.S. 369 (1943); Nichols on Eminent Domain § 8.07 (2011).
[16] Nichols on Eminent Domain § 14A.02 (Matthew Bender, 3d ed.).

4

### III. Testimony regarding rights of entry that are not easements is irrelevant and should be excluded

Roach's expert report states:

> We have reviewed 46 right of entry easements in the immediate area, all of which are silent as to compensation. According to Mr. Kelly Good with the US Border Patrol, these easements were granted without payment. These rights of entry relate to ongoing efforts to secure the US/Mexico border, and several are in conjunction with the Secure Fence Act of 2006. The easements allow several agencies including the US Border Patrol, the Department of Homeland Security, and the County of San Diego, to enter an array of properties to survey, maintain roadways, and construct a border fence. The easements have a range of dates, with two from 1998, one from 2002, three from 2006, 20 from 2007, 10 from 2008, six from 2010 and four from 2011. Regarding duration, two have a three-month time frame, five are six months, 28 are 12 months, 10 are 24 months, and one states its duration as "indefinite". Four of the easements require the grantee to give notice before entering the property; the remaining 42 do not contain such a provision.[17]

But, although Roach refers to these 46 documents as "rights of entry easements," they are not easements at all—and are therefore not comparable to the easement taken here. Instead, they are permissive rights to enter onto property that were voluntary given to the United States, do not convey an interest in property, and are entirely distinct from a condemned easement, as this Court recognized.[18]

Roach himself testified at deposition that he does not consider these rights of entry to be comparable to the easement taken in this case:

> BY MR. MARZULLA:
>    Q. But you would not say that they are comparable transactions; is that correct?
>
>    A. I did not rely on them as -- in the classic sense of comparable transactions. I'm certainly aware of them, but I'm not saying, you know, this one is a comp for this. I'm describing the -- the universe of the 46 that I'm aware of.

---

[17] Roach Appraisal Report at 48.

[18] *See United States v. 242.93 Acres of Land More or Less,* 10-CV-1133-BEN CAB, 2012 WL 579503 (S.D. Cal. Feb. 22, 2012) *5 [Doc. 76].

5

> Q. Okay. And as to those 46, is there any one of them that you identified and said this is a comparable transaction to the easement that is being acquired in this case?
>
> A. No.[19]

Because these 46 rights of entry do not convey an easement (nor any other interest in real property), and this case only concerns the value of an easement, testimony regarding them should be excluded.

### IV. Hearsay statements regarding permissive entry without an easement should be excluded

Roach's expert report states:

> Mr. Ron Bamberger of Boardwalk Development is a San Diego County commercial real estate developer who noted that he always inspects properties he is interested in purchasing, sometimes on multiples occasions. Many times these inspections do not result in him pursuing a purchase, yet he has never once paid for a right of entry for inspection and survey purposes.[20]
>
> . . .
>
> Mr. Quentin Arvin is a real estate appraiser with San Diego County. He has been involved in many transactions where the County acquired or sold property. Mr. Arvin noted that the county is currently considering the purchase of a site that is not under the threat of condemnation. The county has been given a 120 day "free look" to understand the property and perform inspections. Mr. Arvin added that this is common when buying or selling, and in his 20 years at the county, never once has he seen the county pay for a right of entry, nor have they required payment for one. This includes longer term periods for rights of entry, as much as one and two years in duration, for projects with multiple phases.[21]
>
> . . .
>
> San Diego Gas and Electric Company (SDG&E) often receives right of entry agreements to conduct testing and inspections in conjunction with proposed projects. According to Mr. Jeff Sykes with the Land Services department, most of these rights of entry are granted for free and without protest. However, it should be understood that SDG&E has the right to condemn these rights if necessary, and that California law provides for pre-

---

[19] Roach Dep. 93-94:24-8.
[20] Roach Appraisal Report at 47.
[21] *Id.* at 48.

6

condemnation rights of entry by entities having the power to condemn property.[22]

Each of these statements is hearsay and also irrelevant because these parties are not talking about easements. Rather, they are talking about ordinary permission that a prospective seller would give a prospective buyer to inspect the property he is thinking of buying. They say nothing about the value of the easement that the Government condemned in this case—and so should be excluded.

## V. Roach's conclusion of zero value should be excluded because it is not based on any comparable properties

Relying exclusively on the inadmissible evidence regarding the 46 permissive rights of entry that are not easements, along with inadmissible hearsay about pre-purchase inspections, Roach concluded that the easement taken by the Government has zero value. But because use of non-comparable rights of entry is not a recognized appraisal methodology, Roach's conclusion is inadmissible as well.

The Government's own publication on appraisal methodology, the Uniform Standards for Federal Land Acquisition ("The Yellow Book") states the proper method of valuing a temporary easement such as this one: "The appropriate measure of value for the acquisition of a temporary easement is the rental value for the term of the easement, adjusted as may be appropriate for the rights of use, if any, reserved to the owner."[23] Yet Roach made no effort to determine the rental value of the subject property. And, although there might have been some other recognized appraisal methodology he could have used, Roach did not use any.

Instead, Roach used only non-comparable permissive rights of entry and other

---

[22] Roach Appraisal Report at 48.
[23] Uniform Appraisal Standards for Federal Land Acquisitions at 64.

7

inadmissible evidence to reach his zero-value conclusion. But expert testimony may be excluded if it is based on unreliable evidence.[24] Expert opinions that are based upon inadmissible hearsay may also be excluded.

Finally, Roach used the wrong test. "Impact to the property" is not the test for market value.[25] And, to the extent that by "impact" Roach meant the extent to which the Government actually used the easement, such evidence is always inadmissible. "Rights acquired, and not the intended use of those rights, is the measure of the landowner's compensation."[26]

As this Court has already recognized in its order of February 22, 2012,[27] the only issue in this case, the amount of just compensation due, "should be based on an assessment of what precisely the government takes from a landowner."[28] For a temporary taking, like this one, "[t]he usual measure of just compensation . . . is the fair rental value of the property for the period of the taking."[29] To set the fair rental value of the property, evidence and testimony on comparable leases is presented to the Court and the jury. And as this Court has recognized, the comparable sales—and so the only relevant sales—in this case are like those included in the expert report of Randy Tagg, including "short-term leases for truck parking, open storage, and skydiving and parachute training."[30]

Because Roach's zero-value opinion is based entirely on permissive rights of entry

---

[24] *See, e.g.*, *Richmond Med. Ctr. for Women v. Herring*, 527 F.3d 128, 133-34 (4th Cir. 2008) (speculative and unreliable expert testimony was properly excluded); *Hathaway v. Bazany*, 507 F.3d 312, 317-19 (5th Cir. 2007) (proposed expert's testimony was speculative and unreliable under *Daubert* and was thus properly excluded).
[25] Roach Appraisal Report at 46.
[26] 14A *Nichols on Eminent Domain* § 14A.02 (Matthew Bender, 3d ed.).
[27] *United States v. 242.93 Acres*, No. 10-1153, 2012 WL 579503 (S.D. Cal. Feb. 22, 2012) [Doc. 76].
[28] *Id.* at *4.
[29] *Id.* (quoting *Otay Mesa Prop., L.P. v. United States*, 670 F.3d 1358, 1354 (Fed. Cir. 2012).
[30] *Id.* at *5.

and inadmissible hearsay, Roach should not be allowed to testify to that value.

**Conclusion**

    For all of these reasons, the Landowners' motion in limine should be granted. The Landowners reserve the right to object to specific exhibits and testimonial evidence at trial, in accordance with the Federal Rules of Evidence.

    Respectfully submitted,

s/ Roger J. Marzulla
Roger J. Marzulla
California State Bar No. 51113
MARZULLA LAW, LLC
1150 Connecticut Ave., NW
Suite 1050
Washington, DC 20036
(202) 822-6760 (telephone)
(202) 822-6774 (facsimile)
roger@marzulla.com

Bradley L. Jacobs
Attorney At Law
California State Bar No. 162761
501 W. Broadway
Suite 1650
San Diego, California 92101
(619) 233-9503 (telephone)
(619) 233-3730 (facsimile)
attorneybradjacobs@hotmail.com

Dated: April 23, 2012                                      Counsel for Defendants

9